IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK05-42948 |
| ) | |
| RANDALL W. GRAY, ) | CH. 7 |
| ) | |
| Debtor. ) | |
| AUTOMOTIVE FINANCE CORPORATION, ) | ADV. PROC. A05-04068 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| RANDALL W. GRAY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

This matter was presented to the Court on Plaintiff's Motion for Partial Summary Judgment (Fil. #48), and Defendant's Objection thereto (Fil. #52). John T. Tarrell appeared for Defendant, and John L. Horan appeared for Plaintiff. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

The issue in this case is whether collateral estoppel should apply to prevent Defendant from relitigating his liability to Plaintiff on eight insufficient fund checks. This Court finds that as a result of the application of the doctrine of collateral estoppel and other evidence presented by Plaintiff, summary judgment should be granted to Plaintiff as described below.

*Findings of Fact*

The following facts are undisputed according to the Joint Pretrial Statement (Fil. #39) filed by the parties:

1. At all times relevant hereto, Plaintiff was engaged in the business of providing floor plan financing to automobile dealers, including Defendant.

2. On or about August 20, 2002, Defendant executed a Demand Promissory Note and Security Agreement in favor of Plaintiff ("Agreement"), whereby Plaintiff agreed to provide discretionary floor plan financing to Defendant in connection with his used car business in Kearney, Nebraska, in accordance with the terms of the Agreement.

3.  Under the terms of the Agreement and to secure the amounts due thereunder, Defendant granted Plaintiff a security interest in the following property ("Collateral"): all equipment of any kind or nature and all Vehicles (as defined in the Agreement), vehicle parts, and other inventory now owned or hereafter acquired, including, without limitation, the Purchase Money Inventory (as defined in the Agreement) and all additions, accessions, accessories, replacements, and proceeds thereof; all accounts, chattel paper, and general intangibles now owned or hereafter acquired by Defendant together with the proceeds thereof; and all of Defendant's books and records relating to the foregoing.

4.  At all times relevant hereto, Plaintiff's security interest in the Collateral was perfected by the filing of financing statements with the Office of the Secretary of State for the State of Nebraska. As additional security, Plaintiff typically retained the Certificates of Title to vehicles floor-planned with Defendant, and often would release and deliver to Defendant a Certificate of Title for a particular vehicle upon receipt by Plaintiff of payment for said vehicle.

5.  Section 2.6 of the Agreement required Defendant to repay Plaintiff for any vehicle acquired by Defendant with funds advanced under the Agreement, within 48 hours after the disposition of said vehicle by Defendant, by sale or otherwise.

6.  Section 4.0 of the Agreement required Defendant, upon disposition of any vehicle acquired with an advance under the Agreement, to hold, in trust for the benefit of Plaintiff, any funds received by Defendant from said disposition, and to pay said funds to Plaintiff in accordance with Section 2.6 of the Agreement.

7.  During the period between August and December, 2003, Defendant acquired the following eight vehicles with loan advances made by Plaintiff under the Agreement, in the amounts reflected below (collectively, the "Vehicles"):

| Year | Make | Model | VIN (last 6 digits) | Amount Advanced |
|---|---|---|---|---|
| 2001 | Daewoo | Nubira | 595724 | 2,950.00 |
| 2000 | Ford | Focus | 143152 | 5,705.00 |
| 1999 | Toyota | Camry | 607179 | 6,465.00 |
| 1995 | Toyota | Camry | 074047 | 4,680.00 |
| 1995 | Honda | Accord | 030873 | 4,830.00 |
| 2001 | Toyota | Tacoma | 773775 | 12,825.00 |
| 1999 | Chrysler/Jeep | Grand Cherokee | 578586 | 12,000.00 |
| 1995 | Ford | Explorer | A80949 | 3,885.00 |

8. Defendant subsequently sold the Vehicles to certain third parties and received the sale proceeds from said third parties.

9. Defendant never remitted to Plaintiff the proceeds from the sale of the Vehicles.

10. On December 18, 2003, and December 19, 2003, in purported repayment of the loan advances made under the Agreement for the acquisition of the Vehicles, Defendant issued to Plaintiff the following-described eight checks, drawn on Defendant's account at U.S. Bank, N.A. ("Bank"), in the amounts stated (collectively, the "Checks"):

| Check | Amount |
|---|---|
| 6689 | $ 5,282.00 |
| 6690 | $12,961.00 |
| 6691 | $12,095.00 |
| 6692 | $ 3,955.00 |
| 6694 | $ 4,930.00 |
| 6703 | $ 2,779.00 |
| 6713 | $ 5,951.00 |
| 6723 | $   577.00 |
|  | $48,530.00 |

In addition to the foregoing, Plaintiff presented evidence of the following facts in support of its motion for summary judgment, and Defendant did not present any contrary evidence:

11. In reliance on issuance of the Checks, Plaintiff released to Defendant the Certificates of Title to the Vehicles ("Titles"), which Plaintiff had been holding as collateral to secure Defendant's obligations to Plaintiff under the Agreement. [Fil. #49, Ex. 2, Criminal Trial Transcript, at 184:3-188:23 and Neff-Fulcher Decl., at ¶ 12].

12. Plaintiff attempted to negotiate the Checks, but the Checks were returned unpaid and marked "NSF," due to insufficient funds in Plaintiff's account at the Bank. [Fil. #39, Joint Statement, at ¶ 16; Fil. #49, Neff-Fulcher Decl., at ¶ 13].

13. Plaintiff notified Defendant that the Checks were returned unpaid due to the insufficiency of funds in Defendant's account at the Bank to cover the Checks, but Defendant never made good on any of the Checks. [Fil. #39, Joint Statement, at ¶ 17; Fil. #49, Neff-Fulcher Decl., at ¶ 14].

14. Following a trial in a criminal proceeding against Defendant in the District Court of Buffalo County, Nebraska ("State Court"), captioned as *State of Nebraska v. Gray* and docketed as case number CR04 73 ("Criminal Proceeding"), the State Court found Defendant guilty of a Class III felony for issuance of bad checks. In so doing, the State Court made the following factual findings:

      a.     That Defendant issued the Checks to Plaintiff;

      b.     That, at the time the Checks were issued, Defendant knew that he did not have sufficient funds in his account at, or credit with, the Bank to cover the Checks upon presentation; and

      c.     That Defendant received present value for issuance of the Checks, by virtue of Plaintiff's release of the Titles to Defendant, in reliance upon Defendant's issuance of the Checks.

[Fil. #39, Joint Statement, at 18; Fil. #49, Ex. 2, Criminal Trial Transcript, at 184:3-188:23 and Ex. 3, State Court Journal Entry].

    15.    Defendant appealed his criminal conviction to the Nebraska Court of Appeals, which appeal was docketed as Case No. A-05-496, and, on or about August 15, 2006, the Nebraska Court of Appeals affirmed Defendant's conviction, by issuance of a Memorandum Opinion and Judgment on Appeal. [Fil. #49, Ex. 4, Nebraska Court of Appeals Docket Sheet].

*Discussion*

    Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *American Shizuki Corp. v. IBM Corp.*, 251 F.3d 1206, 1208 (8th Cir. 2001).

    The doctrine of collateral estoppel, also known as issue preclusion, precludes a party from retrying factual or legal issues which have actually and necessarily been determined by a valid and final judgment in a prior case. *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997); *Schiffern v. Niobrara Valley Elec. Membership Corp.*, 250 Neb. 1, 8, 547 N.W.2d 478, 483 (Neb. 1996). It is well settled that collateral estoppel applies in bankruptcy dischargeability proceedings under § 523 of the Bankruptcy Code, to bar the relitigation of factual or legal issues that were determined in prior state court proceedings, including criminal proceedings. *In re Madsen*, 195 F.3d 988, 989 (8th Cir.1999) (citing *Grogan v. Garner,* 498 U.S. 279, 284-85 n. 11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). When an issue has been previously litigated in a state court, the bankruptcy court will apply the law of collateral estoppel of the state. *Madsen*, *supra*.

    Under Nebraska law, the doctrine applies where: (1) the identical issue was decided in the prior action; (2) there was a judgment on the merits which was final; (3) the party against whom the rule is applied was a party or in privity with a party to the prior action; and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Denny Wiekhorst Equipment, Inc. v. Tri-State Outdoor Media Group, Inc.,* 269 Neb. 354, 360, 693 N.W.2d 506, 511 (2005).

Elements (2), (3), and (4) above are clearly satisfied. Therefore, the only remaining element for application of collateral estoppel under Nebraska law would be the identity-of-issue requirement.

In a nondischargeability proceeding in a bankruptcy case, the pertinent question is whether the state court judgment establishes the elements of a prima facie case under § 523 of the Bankruptcy Code. *Matter of White*, 315 B.R. 741, 747 (Bankr. D. Neb. 2004).

Defendant's Class III felony conviction for issuance of bad checks was rendered pursuant to Neb. Rev. Stat. § 28-611(1)(a). [Fil. #49, Ex. 2, Criminal Trial Transcript, at 184:3-17]. The Nebraska Supreme Court has made it clear that the "principal ingredient of the offense is the intent to defraud." *State v. Kock*, 207 Neb. 731, 733, 300 N.W.2d 824, 825 (1981) (citing *White v. State*, 135 Neb 154, 158, 280 N.W. 433, 435 (1938)). Thus, the State Court necessarily found an intent to defraud. In rendering its conviction of Defendant, the State Court also found that Defendant issued the Checks for present value (release and delivery of the Titles) knowing that he did not have sufficient funds for the payment of the Checks upon presentment. [Fil. #49, Ex. 2, Criminal Trial Transcript, at 185:3-188:23 and Ex. 3; State Court Journal Entry].

Section 523(a)(2)(A) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C.A. § 523(a)(2)(A).

A creditor proceeding under § 523(a)(2)(A) must prove the following elements, by a preponderance of the evidence:

1. The debtor made representations;
2. At the time made, the debtor knew them to be false;
3. The representations were made with the intention and purpose of deceiving the creditor;
4. The creditor justifiably relied on the representations; and
5. The creditor sustained the alleged injury as a proximate result of the representations having been made.

*Matter of White*, 315 B.R. 741, 748 (Bankr. D. Neb. 2004).

Elements 1, 2, 3, and 5 are clearly satisfied as a result of the State Court's findings referenced above. The only potential issue is whether Plaintiff justifiably relied on the representations. Plaintiff

gave Defendant the Titles to the Vehicles in return for the Checks. Plaintiff submitted evidence that it relied on the issuance of the Checks in releasing the Titles (Fil. #49, Neff-Fulcher Decl., at ¶¶ 11 and 12). Defendant has not presented any evidence to the contrary. Accordingly, Plaintiff has presented a prima facie case of justifiable reliance.

All of the requisite elements for determination of nondischargeability under § 523(a)(2)(A) are established by the State Court proceedings and collateral estoppel precludes Defendant from relitigating those issues. Since there are no genuine issues of material fact to be decided with respect to the eight Checks described herein, Plaintiff is entitled to judgment as a matter of law.

IT IS ORDERED: That Plaintiff's Motion for Partial Summary Judgment is granted and Defendant's obligation to Plaintiff for insufficient fund Checks in the amount of $48,530.00 is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

This memorandum is not a final, appealable judgment because it only deals with a portion of the claims which are the subject of the Complaint. At the time the case is completed, a final judgment will be entered.

DATED: February 15, 2007.

BY THE COURT:

/s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
    John T. Tarrell
    *John L. Horan
    John A. Wolf
    U.S. Trustee

Movant(*) is responsible for giving notice to other parties if required by rule or statute.